## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| GREGORY HERNANDEZ a/k/a | ) | |
| ISRAEL RAMOS, | ) | |
| (N-10365), | ) | |
|  | ) | |
| Petitioner, | ) | Case No. 20-cv-4633 |
|  | ) | |
| v. | ) | Hon. Steven C. Seeger |
|  | ) | |
| JEFFREY DENNISON, WARDEN, | ) | |
| PINCKNEYVILLE CORRECTIONAL | ) | |
| CENTER, | ) | |
|  | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Gregory Hernandez, a prisoner at the Pinckneyville Correctional Center, brings this *pro se* habeas corpus action under 28 U.S.C. § 2254. He challenges his convictions for armed robbery, aggravated battery of a senior citizen, and home invasion from the Circuit Court of DuPage County, Illinois. The Court denies the petition and declines to issue a certificate of appealability.

## I.   Background

The Court draws the following factual history from the state court record and state appellate court opinions. *See* State Court Record (Dckt. No. 18). State court factual findings, including facts set forth in state court opinions, have a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted). Petitioner has not made such a showing.

The elderly victims in this case, Gus and Eunice Pakosta, ran a jewelry repair business out of their home in Naperville, Illinois.  *See Illinois v. Hernandez*, No. 2-08-612 (Ill. App. Ct. Aug. 3, 2010) (Dckt. No. 18-7, at 1) ("Second Direct Appeal").  Basically, Petitioner broke into their home in the middle of the night, battered them, and took their belongings.  Gus and Eunice both testified at Petitioner's trial.  *See Illinois v. Hernandez*, No. 2-02-717 (Ill. App. Ct. May 18, 2004) ("First Direct Appeal") (Dckt. No. 18-1, at 1 of 10).

On December 7, 1998, shortly before 3:00 a.m., Eunice was asleep in her bed at home. She woke up to find Petitioner standing at the foot of her bed.  *Id.* at 2 of 10.  She was 69 years old.  *Id.*

Petitioner, who was wearing a black leather jacket, claimed that he was a police officer, and told her that she needed to go downstairs because there had been a robbery.  *Id*. at 2–3. Eunice followed Petitioner downstairs to find Gus on the floor with his face bleeding.  *Id*. at 3.

Gus, who had been sleeping in a separate room, had heard a noise in the basement.  *Id.* He went to investigate, and found Petitioner, who claimed to be a police officer.  *Id.*  Petitioner chased after Gus and hit him with tin snips that had been in the basement.  *Id.*

Once Eunice was downstairs with Gus, Petitioner continued hitting Gus with the tin snips, swore at him, and threatened to kill him.  *Id.*  Petitioner demanded that Gus give him a gun, but Gus explained he did not have a gun.  *Id.*  Eunice tried to stop Petitioner from hitting Gus, but Petitioner responded by striking her on the head, causing her to fall on the floor bleeding.  *Id*.

Petitioner took the couple to Gus's home office where he repaired jewelry and kept a safe.  *Id.*  He demanded that Gus open the safe and threatened to kill him with the tin snips if he

did not comply. *Id*. Gus was unable to open the safe because he had blood running down his face, so Petitioner restrained Gus by standing on his back. *Id*.

Eunice opened the safe, gave Petitioner $2,000, and then locked the safe. *Id*. Petitioner responded by striking Eunice on the head, telling her that he wanted everything in the safe and that he would kill her if she did not comply. *Id*. Eunice reopened the safe and gave Petitioner the contents, including Gus's diamond ring and approximately 20 watches. *Id*. Petitioner fled from the home, and Gus and Eunice called the police. *Id*. at 4.

A responding police officer found Eunice and Gus lying on the floor near the home office and a large amount of blood on the kitchen floor. *Id*. They were both covered in blood, and Gus was bleeding from his head and had scratches on his neck and forearm. *Id*. The glass on a sliding door in the house was broken, and a second door was also open. *Id*.

The police took Eunice and Gus to a local hospital. *Id*. Gus had bruising on his left cheek, arms, legs, and chest. *Id*. He had an inch-long laceration above the lung, two lacerations above his eyebrow, and a fractured rib. *Id*. Eunice had two lacerations to her scalp. One laceration was three-quarters of an inch, and the other was one inch. *Id*. She had bruises and abrasions to her abdomen as well. *Id*.

Eunice and Gus provided a description of the offender to the responding police officer. *Id*. The officer later provided them a photo array, and they identified Petitioner as the offender. *Id*. The police investigation revealed that Petitioner had stayed at a nearby motel for approximately a month before the robbery. *Id*.

The police located Petitioner and arrested him pursuant to an arrest warrant a few weeks after the robbery. *Id*. at 5. Petitioner had watches stolen from the safe in his possession when he was arrested. *Id*. The police also went to Petitioner's brother's apartment in Chicago where they

recovered a black leather jacket and a pawn slip that was later used to redeem Gus's ring from a pawn broker. *Id.*

Forensic testing later matched Gus and Eunice's DNA to blood stains on the recovered leather jacket. *Id.* Crime scene investigators also recovered fingerprints from a broken basement window at the victims' home and matched them to Petitioner's fingerprints. *Id.*

At trial, Petitioner was found guilty of two counts of attempted murder, four counts of home invasion, two counts of armed robbery, and two counts of aggravated battery against a senior citizen. *Id.* at 6. The trial court merged two counts of home invasion and the aggravated battery of a senior citizen convictions into the remaining convictions, and sentenced Petitioner to a total of 90 years of imprisonment. *Id.*

On direct appeal, the state appellate court reversed the attempted murder conviction, holding that there was insufficient evidence. *Id.* at 7–10. The appellate court also vacated one armed robbery count and a home invasion count under Illinois's One Act One Crime doctrine. The appellate court reinstated the convictions for aggravated battery against senior citizens. *Id.* It then remanded the case to the trial court for resentencing. *Id.*

Petitioner brought a petition for leave to appeal before the Illinois Supreme Court. *See* Petition for Leave to Appeal (Dckt. No. 18-2). That court denied the petition. *See Illinois v. Hernandez*, No. 99560, 829 N.E.2d 791 (Ill. Jan. 26, 2005) (Table).

On remand, the trial court resentenced Petitioner to 40 years for armed robbery, and 40 years for home invasion, running consecutively, for a total of 80 years of imprisonment, with the convictions for aggravated battery of senior citizens merged into the other convictions. *See* Second Direct Appeal (Dckt. No. 18-7, at 4–5 of 10).

4

Petitioner again appealed, but this time the appellate court affirmed. *Id.* at 10. His petition for leave to appeal was denied, completing his direct appeal proceedings. *See Illinois v. Hernandez*, No. 110968, 949 N.E.2d 661 (Ill. Mar. 30, 2011) (Table) (Dckt. No. 18-8).

Petitioner then brought a post-conviction petition in the state trial court. *See Illinois v. Hernandez*, 2016 IL 118672, ¶ 1 ("Post-Conviction Appeal"). The court rejected his claims, except for one sentencing challenge. *Id*. The state trial court found that the armed robbery statute used to sentence Petitioner was facially unconstitutional under the Illinois Constitution's proportionate penalties clause. *Id*.

The prosecution appealed as of right to the Supreme Court of Illinois on that state constitutional issue, and obtained a reversal of the trial court. *Id*.

Petitioner also brought an appeal to the state appellate court. He challenged the denial of the remaining portions of his post-conviction petition (meaning the portions that did not involve the constitutional challenge addressed in the appeal to the Supreme Court of Illinois). *See Illinois v. Hernandez*, 2019 IL App (2d) 150889-U, ¶ 2.

The appellate court affirmed the denial of the remaining portions of the post-conviction petition, *id.*, and the Supreme Court of Illinois denied Petitioner's petition for leave to appeal. *See Illinois v. Hernandez*, *Illinois v. Hernandez*, No. 125183, 135 N.E.3d 564 (Ill. Nov. 26, 2019) (Table) (Dckt. No. 18-24).

Having completed his state court proceedings, Petitioner now brings this habeas corpus petition before this Court. *See* Petition (Dckt. No. 1).

## II.     Analysis

Hernandez raises four claims in his habeas corpus petition.  *See* Petition (Dckt. No. 1, at 5–14 of 42).

In Claim I, Hernandez claims that the photo array presented to the victims was unduly suggestive, resulting in a mistaken identification of Petitioner as the assailant.  *Id.* at 5–6.

In Claim II, Hernandez claims that the prosecution's fingerprint expert witness contributed to a wrongful conviction and incarceration.  According to Hernandez:  (1) the expert stated that he recovered two fingerprints from the scene, when only one was tendered in discovery; (2) the expert gave false (and, therefore, perjured) testimony; (3) the government failed to disclose materially exculpatory evidence concerning the fingerprints, in violation of *Brady*; (4) there was an improper evidentiary foundation for the fingerprint testimony; and (5) trial counsel provided ineffective assistance on the fingerprint issue.  *Id.* at 6.

In Claim III, Hernandez claims that imposing consecutive cases violated the "law of the case" doctrine, which in turn violated his rights to due process and equal protection.  *Id.* at 6, 17.

In Claim IV, Hernandez challenges the prosecution's use of a DNA expert.  He challenges the foundation for the testimony, as well as the methodology and results.  He takes issue with the seizure of his blood to conduct the DNA testing.  He raises another argument about ineffective assistance of trial counsel, too.  *Id.* at 7.

Respondent answers that the sentencing claim (Claim III) is noncognizable and that the remaining claims (Claims I, II, and IV) are procedurally defaulted.

This Court will address the claim about sentencing (Count III) before turning to the other three claims.

A.    **Consecutive Sentence Challenge (Claim III)**

Petitioner challenges his resentencing based on what happened during the appeal of his original sentencing.

The state appellate court vacated Petitioner's attempted murder convictions on his first direct appeal because the prosecution failed to prove beyond a reasonable doubt that Petitioner had the requisite intent to kill the victims. *See* First Direct Appeal (Dckt. No. 18-1, at 7–9 of 10). On remand, Petitioner was resentenced and received a 40-year sentence for armed robbery, running consecutively to a 40-year sentence for home invasion. *See* Second Direct Appeal (Dckt. No. 18-7, at 4 of 10). So, he got 80 years.

Petitioner argues that the state trial court erred in imposing the consecutive sentences on remand. He argues that the appellate court concluded that the victims did not suffer severe bodily injury. *See* Petition, at 17 (Dckt. No. 1). He believes that the first appeal's reversal of his attempted murder convictions resulted in law of the case.

As Petitioner sees it, the success of his first appeal prevented the imposition of consecutive sentences under 730 ILCS 5/5-8-4. In his view, "the trial court abused its discretion in ingaging [sic] in the consideration of improper factors in resentencing by negating Law of the Case doctrine." *Id.* And by overlooking the law of the case doctrine, the trial court violated his right to due process and equal protection. *Id.*

Respondent is correct that this claim is noncognizable. "[I]it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015); 28 U.S.C. § 2241.

Petitioner's challenge is limited to the interpretation of Illinois's consecutive sentence statute, and so it fails to raise a cognizable issue of federal law. *See Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (holding that an argument involving application of 730 ILCS 5/5-8-4 for the imposition of consecutive sentences involved a noncognizable issue of state law).

An argument about the law of the case doctrine under state law is not cognizable on federal habeas review. As applied here, the law of the case doctrine is a common law doctrine under state law, not federal law, so it is out of habeas's reach. *See Huizar v. Melvin*, 2020 WL 868529, at *5 (N.D. Ill. 2020); *Soojian v. Lizarraga*, 2018 WL 3155617, at *39 (E.D. Cal. 2018) ("[A] state court's failure to employ judicial estoppel or to adhere to the law of the case doctrine does not implicate federal constitutional rights."); *United States ex rel. Baird*, 326 F. Supp. 2d 909, 912 (N.D. Ill. 2004).

Additionally, Petitioner's invocation of due process and equal protection does not transform his state law claim into a federal claim. *See Dellinger*, 301 F.3d at 764 (noting that although the prisoner phrased the claim under due process and equal protection, the merits of the claim was a noncognizable challenge to the application of Illinois's consecutive sentence statute). Petitioner cannot obtain habeas review of a state law issue by simply wrapping it in federal constitutional paper. So the Court denies Claim III as a basis for habeas relief.

### B.     Procedural Default (Claims I, II, and IV)

Respondent argues that the Court should reject Petitioner's remaining claims – Claims I, II, and IV – because they are procedurally defaulted. The Court agrees.

To preserve a claim for federal habeas corpus review, a prisoner must fairly present the claim through one complete round of state court review, including through a petition for leave to appeal before the Supreme Court of Illinois. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018).

To avoid procedural default, the prisoner must present the operative facts and controlling legal principles of a claim before the state court, so that the state court has a fair opportunity to correct the alleged federal violation. *See Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018) (citations omitted). The claim must be squarely presented in the filing before the state court. *See Sturgeon v. Chandler*, 552 F.3d 604, 610 (7th Cir. 2009). A passing reference to a claim is insufficient. *Id*. Equally, the state court judge is not required to read beyond the four corners of the filing, such as reviewing a lower court opinion or documents in the state court record, to understand the prisoner's claim. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

"Federal courts typically will not consider [a procedurally defaulted] claim on its merits." *Lombardo v. United States*, 860 F.3d 547, 555 (7th Cir. 2017). But there are exceptions. If a petitioner can show "cause for the default and prejudice from a violation of federal law," the court may nevertheless consider a procedurally defaulted claim. *Id*.

Petitioner has not exhausted state court review for Claims I, II, and IV. And he cannot fit through the escape hatch of cause and prejudice or fundamental miscarriage of justice, either.

### 1. Exhaustion of State Court Review

Petitioner's first direct appeal[1] raised claims about: (a) the seizure of his leather jacket that was in his brother's possession and the resulting DNA evidence; (b) whether there was sufficient evidence to support the attempted murder convictions; (c) how Illinois's One Act, One

---

[1] At the outset, the Court notes that Respondent did not submit Petitioner's brief from his first direct appeal. Respondent explains the briefs were no longer available due to the age of the appeal. *See Petition* (Dckt. No. 18, at 1, n.1). Traditionally, the Court looks to the state court briefs to determine what claims were fairly presented by the prisoner for the purpose of exhaustion. *See Baldwin v. Reese*, 541 U.S. 27, 28−30 (2004). However, as mentioned above, a prisoner must also raise his claims through a petition for leave to appeal before the Supreme Court of Illinois. *See Boerckel*, 526 U.S. at 845−46. Respondent did file the petition for leave to appeal from the first direct appeal. *See Petition for Leave to Appeal* (Dckt. No. 18-2). The claims addressed in the state appellate court opinion in the first direct appeal are the same as the claims raised in the petition for leave to appeal. Thus, the Court will rely upon the state appellate court opinion and the petition for leave to appeal for the claims raised on the first state direct appeal.

Crime doctrine affects the home invasion and armed robbery conviction; and (4) the excessiveness of his 90-year sentence. *See* First Direct Appeal (Dckt. No. 18-1); Petition for Leave to Appeal (Dckt. No. 18-2).

As a reminder, his petition for habeas relief now raises claims about an unduly suggestive photo array, and about the prosecution's fingerprint and DNA experts (plus trial counsel's ineffectiveness in failing to raise claims against those experts). Claims I, II, and IV in this petition have nothing to with the seizure of his leather jacket,[2] the sufficiency of the evidence, or the sentence given by the trial court. So, his first direct appeal did not exhaust any of Petitioner's current claims.

Petitioner's second direct appeal failed to exhaust any of his current claims, too. In that appeal, Petitioner raised a single challenge to the imposition of consecutive sentences. *See* 11/12/09 Def.'s Br. (Dckt. No. 18-3, at 2 of 39); *see also* Petition for Leave to Appeal (Dckt. No. 18-8, at 4 of 22). But for the reasons stated above (in Claim III), the Court rejects this issue as noncognizable. And in any event, the consecutive sentence issue does nothing to help with exhausting the arguments that Petitioner makes in Claims I, II, and IV.

Finally, Petitioner raised several claims, including many of those raised in this habeas corpus petition, through his original and amended state post-conviction petitions before the state *trial* court. *See* Petition for Post-Conviction Relief (Dckt. No. 18-9); Amended Petition for Post-Conviction Relief (Dckt. No. 18-10).

---

[2] The first direct appeal raised a challenge to the seizure of the jacket and the resulting DNA testing. This habeas corpus petition raises a different claim − a challenge to the seizure of Petitioner's blood used for DNA testing. Regardless, even if the seizure and resulting DNA testing claim raised in the habeas corpus petition is considered properly exhausted (which it is not), the claim would be noncognizable pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), as Petitioner received a full and fair opportunity to raise his Fourth Amendment claims through a pretrial motion to suppress and on direct appeal.

However, Petitioner did not raise these claims in his briefs before the state *appellate* court on post-conviction review. *See* 7/6/17 Def.'s Br. (Dckt. No. 18-15); 8/8/18 Def.'s Supp. Br. (Dckt. No. 18-20). Instead, in that post-conviction proceeding, appellate counsel raised unrelated issues involving Petitioner's desire to proceed *pro se* at the trial court level, and whether the State was entitled to a fee assessed for the appeal proceeding. *Id.*

Importantly, Petitioner did file a *pro se* motion for leave to file a supplemental brief before the state appellate court on post-conviction review. *See* Def.'s Mtn. for Leave to File Supp. Pro Se Br. (Dckt. No. 18-16, at 1–20 of 22 (motion for leave to file supplemental pro se brief). The proposed supplemental brief contained many of the claims that Petitioner brought before the trial court in the post-conviction proceeding and now wishes to raise in this habeas proceeding. *Id.*

But the state court rejected Petitioner's *pro se* filing because Illinois state law disfavors hybrid representation, and he was already represented by counsel. *Id.*, at 22 of 22 (appellate court order) ("Request by pro se defendant-appellant, Gregory C. Hernandez, to supplement the brief filed by his court appointed attorney is denied."). Under state law, a petitioner cannot throw two stones at the same bird – one by the lawyer, and the second by the petitioner himself. *See Miller v. Gomez*, 2022 WL 4291276, at *4 (N.D. Ill. 2022) (concluding that an Illinois appellate court's decision seemingly rested on the state rule disfavoring hybrid representation) (citing *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017); *People v. Redd*, 670 N.E.2d 583, 601 (Ill. 1996); *People v. Pondexter*, 573 N.E.2d 339, 345 (Ill. App. 1991)).

Petitioner did not exhaust state court review by making a request to make additional arguments on a *pro se basis* to the state appellate court, above and beyond the brief filed by counsel. The state court rejected that request for a state procedural reason.

When as here, the state court rejects a prisoner's attempt to supplement his attorney's filing with his own *pro se* filing, the state court ruling is an adequate and independent state ground of decision, and that bars review of the claims raised in the proposed supplemental filing. *See Clemons*, 845 F.3d at 819−20 ("The Supreme Court has explained that a state substantive or procedural rule – including a discretionary procedural rule like this one – 'can serve as an adequate ground to bar federal habeas review.'") (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)).

As a result, Petitioner preserved for federal habeas review only the arguments presented in the post-conviction state appellate court brief filed by his attorney. And, as described above, the claims made in that brief are unrelated to the claims raised in this habeas corpus petition.

Although Petitioner raised his habeas corpus claims in the post-conviction trial court petition (and in the petition for leave to appeal before the Illinois Supreme Court), he failed to properly raise those claims in the state appellate court because, under state law, his *pro se* request for a supplemental filing does not count. *See Clemons*, 845 F.3d 816 at 819−20. As a result, Petitioner did not properly exhaust any claims in his post-conviction proceedings for purposes of this habeas petition, except Claim III. Claims I, II, and IV are procedurally defaulted.

**2.      Cause and Prejudice and Fundamental Miscarriage of Justice**

Although Claims I, II, and IV are procedurally defaulted, the Court may still consider those claims if Petitioner "can demonstrate cause for the default and prejudice, or that the failure to consider his claims would constitute a miscarriage of justice." *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019). Petitioner cannot excuse his defaults through either cause and prejudice, or a fundamental miscarriage of justice.

Cause for an excused default is an "'objective factor, external to [Petitioner] that impeded

his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)).  Examples of cause include:  (1) interference by officials, making compliance impractical; (2) a factual or legal basis that was not reasonably available to counsel; or (3) ineffective assistance of counsel.  *See Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

Petitioner cannot demonstrate cause for an excused default.  When it comes to the state appellate court's rejection of Petitioner's supplemental brief in the post-conviction appeal, the record demonstrates that the state court correctly applied Illinois's rule barring hybrid representation.  For the sake of argument, even if the state court erred on this state procedural rule, the mistake does not help Petitioner show cause and prejudice because "a state's misapplication of its own procedural rule is not cause for default." *Schleeper v. Groose*, 36 F.3d 735, 737 (8th Cir. 1994); *see also Estelle*, 502 U.S. at 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

The fact that post-conviction appellate counsel failed to raise the claims on appeal – meaning the arguments that Petitioner wants to raise here – does not excuse the default, either.  To make an ineffective assistance of counsel argument to excuse a default, a petitioner must properly preserve that argument in the state courts.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009).  Petitioner has not exhausted any ineffective assistance of counsel argument to excuse the default of his claims.  Moreover, ineffective assistance of post-conviction appellate counsel is not a ground for excusing a

13

procedural default.  *See Davila v. Davis*, 137 S. Ct. 2058, 2062−63 (2017).  Because Petitioner cannot show cause, the Court need not discuss the connected requirement of prejudice.

That leaves the fundamental miscarriage of justice – or actual innocence – gateway as a last resort to excuse Petitioner's defaults.  To show actual innocence to defeat a default, Petitioner must demonstrate that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  This is a "demanding" and "seldom met" standard.  *Id.* (citing *House v. Bell*, 547 U.S. 518, 538 (2006)).

Petitioner must present new, reliable evidence that was not presented at trial − such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence − to make a credible claim of actual innocence.  *See House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see also McDonald v. Lemke*, 737 F.3d 476, 483−84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence:  perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")).

Petitioner points to no new evidence, and the evidence supporting his guilt is overwhelming.  DNA and fingerprint evidence matched Petitioner to the crime.  The victims identified him as the assailant, and proceeds from the robbery were recovered from both Petitioner and his brother.  Petitioner cannot demonstrate a fundamental miscarriage of justice.

In sum, Claims I, II, and IV are procedurally defaulted, and Petitioner cannot excuse the defaults through showing either cause and prejudice or a fundamental miscarriage of justice. Therefore, the Court denies the habeas corpus petition.

### III.     Certificate of Appealability and Notice of Appeal Rights

The Court declines to issue a certificate of appealability.  Petitioner cannot make a substantial showing of the denial of a constitutional right, and reasonable jurists would not debate, much less disagree, with this Court's resolution of Petitioner's claims.  *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

Petitioner is advised that this is a final decision ending his case in this Court.  If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(1).

Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights.  However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b).  Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment.  *See* Fed. R. Civ. P. 59(e).  The time to file a motion pursuant to Rule 59(e) cannot be extended.  *See* Fed. R. Civ. P. 6(b)(2).  A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv).

Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.  *See* Fed. R. Civ. P. 60(c)(1).  The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).  A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(4)(A)(vi).

15

**IV.    Conclusion**

Petitioner's habeas corpus petition (Dckt. No. 1) is denied on the merits.  Any other pending motions are denied as moot.  The Court declines to issue a certificate of appealability. The Clerk is instructed to:  (1) terminate Respondent Dennison; (2) add Petitioner's current custodian, David Mitchell, Warden, Pinckneyville Correctional Center, as Respondent; (3) alter the case caption to *Hernandez v. Mitchell*; and (4) enter a Rule 58 judgment in favor of Respondent and against Petitioner.

Date:    January 30, 2023

Steven C. Seeger
United States District Judge